Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6765 | **DATE** | 9/19/2002 |
| **CASE TITLE** | NINOS ANAEL vs. INTERSTATE BRANDS CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: there is no genuine issue of material fact on the claims plaintiff asserts against IBC, which is entitled to judgment as a matter of law. Defendant Interstate Brands Corporation's motion for summary judgment is, therefore, granted. Plaintiff Ninos Anael's motion to file a second amended complaint is denied. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 2 0 2002 date docketed | 40 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

NINOS ANAEL,           )
                       )
      Plaintiff,    )
                       )
v.                     )   No. 00 C 6765
                       )   Paul E. Plunkett, Senior Judge
INTERSTATE BRANDS CORPORATION, )
                       )
      Defendant.    )



DOCKETED
SEP 2 0 2002

## MEMORANDUM OPINION AND ORDER

Ninos Anael has sued Interstate Brands Corporation ("IBC") for its alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Toxic Substances Control Act, 15 U.S.C. § 2622. Defendant has filed a Federal Rule of Civil Procedure 56(c) motion for summary judgment on these claims. For the reasons set forth below, the motion is granted.

### Facts[1]

On November 14, 1994, plaintiff, who is a native of Iraq, was hired as a maintenance apprentice by IBC for its bakery in Schiller Park. (Def.'s LR 56.1(a) Stmt. ¶¶ 1-2, 6.) In July 1996, plaintiff was promoted to maintenance mechanic. (Id. ¶ 9.) On December 11, 1997, plaintiff filed a charge with the EEOC, alleging that IBC had discriminated against him on the basis of his national origin. (Id. ¶ 10.)

---

[1]Unless noted otherwise, the following facts are undisputed.

On January 11, 1998, plaintiff and two other IBC employees who had not filed EEOC charges against the company, were assigned to remove insulation from a hot water tank in the bakery's boiler room. (Id. ¶ 11.) On January 23, 1998, plaintiff and his union steward, Vince Trombetta, complained to the Environmental Protection Agency that the insulation contained asbestos. (Id. ¶ 12.) Plaintiff reported for work at IBC for the last time on January 24, 1998. (Id. ¶¶ 14-15.)

On January 26, 1998, IBC closed the bakery to clean up the asbestos. (Id. ¶ 16.) The clean up took about two weeks. (Id.)

On February 2, 1998, plaintiff filed a charge with the EEOC alleging that IBC had forced him to remove the asbestos-laden insulation in retaliation for his 1997 charge of national origin discrimination. (Id. ¶ 17.)

When the bakery reopened, plaintiff took vacation time from February 7 to 14, 1998. (Id. ¶ 18.) By February 11, 1998, plaintiff says he "had decided that [he] would not go back to work for [IBC]" because he was receiving threatening phone calls and was under a doctor's care for pulmonary problems. (App. Supp. Pl.'s LR 56.1(b) Stmt., Ex. B, Anael Dep. at 102.)

On February 14, 1998, plaintiff called in sick for February 15, 1998, his next scheduled day of work. (Def.'s LR 56.1(a) Stmt. ¶ 20.) Between February 15 and 25, 1998, plaintiff neither reported for work nor notified his supervisor that he would be absent. (Id. ¶¶ 15, 21-22.)

On February 25, 1998, Robert Knorrek, IBC's Human Resources Manager, sent plaintiff a letter that said:

> On Saturday, February 14, 1998, you . . . advised Mr. Chuck Shriner, Maintenance Supervisor, that you would not be at work on Sunday, February 15, 1998, due to sickness.
>
> We have not heard from you since this date. As you know, company policy requires that you notify your immediate supervisor daily if you are absent from work. If your absence is for one week or longer you are required to contact your immediate supervisor on a weekly basis. For your reference, I have enclosed relevant portions of our Employee Handbook relating to employee absences . . . .
>
> Please contact me as soon as possible so that we may determine your work status.

(App. Supp. Def.'s LR 56.1(a) Stmt., Ex. A, Anael Dep., Ex. 10, 2/25/98 Letter to Anael from Knorrek.) Though plaintiff received the letter, he did not respond to it. (Id., Ex. A, Anael Dep. at 321.)

On February 27, 1998, the EEOC issued plaintiff a Right to Sue Letter for his December 1997 national origin discrimination charge. (Def.'s LR 56.1(a) Stmt. ¶ 24.)

On March 5, 1998, the EEOC issued plaintiff a Right to Sue Letter for his February 1998 retaliation charge. (Id. ¶ 25.)

On April 7, 1998, plaintiff filed suit against IBC alleging that it had discriminated against him because of his national origin and retaliated against him because he filed a discrimination charge. (Id. ¶ 26.)

In June 1998, plaintiff was hired as a maintenance mechanic by Alpha Baking Company. (Id. ¶ 28; App. Supp. Def.'s LR 56.1(a) Stmt., Ex. B, Anael Dep. at 113.)

On August 5, 1998, IBC sent plaintiff a certified letter that said:

> Your last day of work was January 24, 1998. On February 25th, I.B.C. had written you and asked you to contact them regarding your absence from work. To date, the only communication from you has been the Accident and Sickness Benefit Claim Form dated April 14, 1998.

> In the existing circumstances, the Company will conclude that you have chosen to stop working here, unless the Human Resources Department has received a written statement by you, by 4:00 P.M. August 12, 1998, which states that you desire to return to work.

(App. Supp. Def.'s LR 56.1(a) Stmt., Ex. A, Anael Dep., Ex. 11, 8/5/98 Letter to Anael from Carr.)

Though he received the August 5, 1998 letter, plaintiff did not provide IBC with a written response to it. (Def.'s LR 56.1(a) Stmt. ¶ 31; Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 31.) Rather, he telephoned Nancy Yde, IBC's Assistant Human Resources Manager. (Def.'s LR 56.1(a) Stmt. ¶ 32.) Plaintiff says that Ms. Yde told him both that he needed to speak to Mr. Knorrek about the August 5, 1998 letter and that he should ignore the letter until he felt ready to return to work. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 31; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 4.) Mr. Knorrek was on sick leave at the time and did not return to work until late August or early September 1998. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 31.)

Plaintiff never spoke to Mr. Knorrek about the August 5, 1998 letter. (Id. ¶ 33; Def.'s LR 56.1(a) Stmt. ¶ 33.) Consequently, IBC deemed plaintiff to have resigned effective August 12, 1998. (App. Supp. Def.'s LR 56.1(a) Stmt., Ex. E, Knorrek Dep., Ex. 7, 8/31/98 Employee Record Notification.)

On October 5, 1998, plaintiff received a certified letter from IBC. (Def.'s LR 56.1(a) Stmt. ¶ 36.) IBC says it was plaintiff's COBRA notification, which listed plaintiff's termination date as August 12, 1998. (Id. ¶ 35.) Plaintiff says it was a second copy of the August 5, 1998 letter. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 36.) In any event, plaintiff did not contact IBC after receiving the letter. (Id.)

In late December 1998 or early January 1999, plaintiff decided to quit Alpha Baking Company, so he stopped reporting for work. (Def.'s LR 56.1(a) Stmt. ¶ 39.) Alpha Baking terminated plaintiff's employment on January 22, 1999. (Id. ¶ 41.)

After he was terminated from Alpha Baking, plaintiff filed for unemployment benefits and moved to California. (Id. ¶ 42.)

Plaintiff returned to Chicago in August 1999 and started working for Flexcan Corporation. (Id. ¶ 44.)

In December 1999, plaintiff had an attorney contact Mr. Trombetta, the IBC union steward, to ask him what the union was going to do about plaintiff's termination. (Id. ¶ 46.)

On February 3, 2000, the union filed grievances protesting the termination, which were denied on February 18, 2000. (Id. ¶ 47.)

On May 24, 2000, plaintiff filed a charge with the EEOC alleging that he had been terminated by IBC in retaliation for his earlier filing of EEOC charges. (Id. ¶ 48.)

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls

of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

Plaintiff's first claim is that IBC discharged him in retaliation for filing charges of discrimination against it. IBC contends that this claim is time-barred. The Court agrees.

Title VII requires claimants to file a charge of discrimination with the EEOC within 300 days of any unlawful employment act. See 42 U.S.C. § 2000e-5(e)(1) (stating that claim initiated with a state or local agency must be filed with the EEOC within 300 days); (App. Supp. Def.'s Mot. Summ. J., Ex. B, Anael Dep., Ex. 13, 5/24/00 EEOC Charge (stating that it was filed with the Illinois Department of Human Rights)). Any claimant who fails to do so forfeits his right to sue. Babrocky v. Jewel Food Co., 773 F.2d 857, 863 (7th Cir. 1985). The allegedly unlawful employment practice in this case is plaintiff's termination, which occurred on August 12, 1998. (App. Supp. Def.'s LR 56.1(a) Stmt., Ex. E, Knorrek Dep., Ex. 7, 8/31/98 Employee Record Notification.) Plaintiff did not file his EEOC charge until May 24, 2000, well after the 300-day filing period had expired. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 48.)

Despite the nearly two-year time lapse between his termination and the filing of his charge, plaintiff says the discovery rule renders his charge timely.[2] Though IBC terminated him in August

---

[2]Though plaintiff frames his argument in terms of equitable tolling, (see Mem. Law Supp. Pl.'s Resp. Def.'s Mot. Summ. J. at 10), his alleged unawareness of his termination actually implicates the discovery rule. See Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450 (7th Cir. 1991) (distinguishing between the discovery rule, which "postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured" from the doctrine of equitable tolling, which "stop[s] the statute of limitations from running even if the accrual date has passed").

1998, plaintiff says he did not discover that fact until sometime in February 2000. Because the entire month of February 2000 falls within the 300-day filing period, plaintiff contends that his charge is timely.

As an initial matter, the record does not support plaintiff's claim that he did not realize he had been terminated until February 2000. Plaintiff admits that he had an attorney contact Mr. Trombetta, the IBC union steward, to complain about his termination in December 1999. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 46.) Thus, even viewed favorably to plaintiff, the record establishes that he knew about his termination at least two months earlier than he claims.

Moreover, under the federal discovery rule, the filing period begins to run when the plaintiff "knew or *should have known* about his injury." Ferguson v. Roberts, 11 F.3d 696, 704-05 (7th Cir. 1993) (emphasis added). The record establishes that plaintiff reasonably should have known about his termination long before December 1999.

Plaintiff admits that he received the August 5, 1998 letter from IBC instructing him to provide a written response by August 12, 1998 or the company would terminate his employment. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 30-31.) Though plaintiff says Ms. Yde told him to ignore the letter, he also admits that she told him he would have to speak to Mr. Knorrek about it. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 31.) Plaintiff never contacted Mr. Knorrek about the letter. (Id. ¶¶ 31, 33.) Moreover, in early October 1998, plaintiff says he received a second copy of the August 5, 1998 letter from IBC. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 35-36; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 6.) He did not, however, contact IBC to determine why that letter, which Ms. Yde had previously told him to ignore, was sent to him again. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 36.) Had plaintiff contacted Mr.

Knorrek in August 1998, as Ms. Yde had instructed him to do, or in October 1998, when plaintiff received the second copy of the August 5, 1998 letter, he would have discovered that IBC had terminated his employment. Because plaintiff should known about his termination by October 1998, at the latest, his May 24, 2000 EEOC charge contesting that action was untimely.

Even if IBC had done nothing to alert plaintiff to his termination, plaintiff's actions after August 1998, when Ms. Yde allegedly told him to ignore the August 5, 1998 letter, belie his claim that he believed he was still employed by IBC. In June 1988, five months after he stopped reporting for work at IBC, plaintiff started working for Alpha Baking Company. (Id. ¶¶ 15, 28.) After Alpha Baking Company discharged him, plaintiff applied for unemployment benefits and moved to California. (Id. ¶¶ 39-42.) In August 1999, plaintiff returned to Chicago and started working for Flexcan Corporation. (Id. ¶ 44.) Given plaintiff's admission that he had not worked at IBC since January 24, 1998, had worked for two other employers from June 1998 through the fall of 1999, applied for unemployment benefits in early 1999 and lived in California for the first six months of 1999, no reasonable jury could credit his claim that he believed he was employed by IBC until December 1999. Cf. Cada v. Baxter Healthcare Corp., 920 F.2d 446, 453 (7th Cir. 1990) (discovery rule did not save untimely ADA discharge claim because uncontested evidence "that no rational jury could discount" showed that plaintiff picked up severance forms before he claimed to have learned about the discharge). In short, the record establishes that plaintiff should have known, by October 1998, at the latest, that IBC had discharged him. Because plaintiff did not file an EEOC charge contesting that action within the statutorily prescribed 300-day period, his Title VII retaliatory discharge claim must be dismissed.

Plaintiff also contends that his discharge violates the Toxic Substances Control Act ("TSA"). The TSA prohibits employers from "discharg[ing] . . . or otherwise discriminat[ing] against any employee with respect to the employee's compensation, terms, conditions, or privileges of employment because the employee . . . has . . . assisted or participated . . . in any . . . action to carry out the purposes" of the statute. 15 U.S.C. § 2622(a). It directs employees who believe that they have been discharged in violation of the Act to file a complaint with the Secretary of Labor. 15 U.S.C. § 2622(b)(1). The Secretary is directed to investigate and adjudicate such complaints and is empowered to order a variety of remedies, including reinstatement, back pay and damages. 15 U.S.C. § 2622(b)(2). Jurisdiction to review the Secretary's orders is vested solely in the United States Courts of Appeal. 15 U.S.C. § 2622(c)(1). An order that is not submitted to a court of appeal for review "shall not be subject to judicial review in any criminal or other civil proceeding." 15 U.S.C. § 2622(c)(2).

Conspicuously absent from the statute is any mention of a private right of action for employees who suffer unlawful retaliation. Thus, plaintiff has a viable claim only if such a right is implicit in the statute. The seminal case on implied private rights of action is Cort v. Ash, 422 U.S. 66 (1975). In that case, the Court identified four factors that must be weighed to determine whether a private right of action is implicit in a federal statute: (1) is plaintiff a member of the class for whom the law was enacted?; (2) is there any indication that Congress intended to create or deny such a remedy?; (3) is implying a remedy consistent with the underlying purposes of the statute?; and (4) is the cause of action one traditionally relegated to state law? Id. at 78. In subsequent cases, however, the Court retreated from the four-factor test and now focuses solely on legislative intent. See, e.g., Touche Ross & Co. v. Redington, 442 U.S. 560, 568 (1979) ("[O]ur task is limited solely

to determining whether Congress intended to create the private right of action asserted . . . ."); Transamerica Mortgage Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979) ("While some opinions of the Court have placed considerable emphasis upon the desirability of implying private rights of action . . . to provide remedies thought to effectuate the purposes of a given statute, . . . what must ultimately be determined is whether Congress intended to create the private remedy asserted . . . .")

The starting point for determining Congress' intent is the language of the statute. Touche Ross, 442 U.S. at 568. It is also the ending point, when the intent is apparent from the plain language of the statute. In the words of the Supreme Court, "courts must presume that a legislature says in a statute what it means and means in a statute what it says . . . ." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, . . . judicial inquiry is complete." Id. at 254 (internal quotation marks and citation omitted).

In this case, the unambiguous language of the TSA's retaliation provision clearly evinces Congress' intent not to create a private right of action. The statute provides a remedy for those who believe they have been discharged in violation of the statute: an administrative action before the Secretary of Labor. 15 U.S.C. § 2622(b). The Secretary has full authority to enforce the retaliation provision, including the power to grant injunctive and monetary relief. Id. The only district court suit envisioned by the statute is one brought by the Secretary to enforce his orders. 15 U.S.C. § 2622(d). "In view of these express provisions for enforcing [the retaliation ban], it is highly improbable that Congress absentmindedly forgot to mention an intended private action." Transamerica, 444 U.S. at 20 (internal quotation marks and citation omitted).

Plaintiff argues that McElroy v. SOS Int'l, Inc., 730 F. Supp. 803 (N.D. Ill. 1989) establishes the viability of his claim. But his reliance on that case is misplaced. The McElroy court held that

the Occupational Health and Safety Act ("OSHA") did not preempt an employee's state-law claim that he had been fired in retaliation for complaining about OSHA violations at his workplace. Id. at 807. Unlike the plaintiff in McElroy, however, plaintiff in this case is attempting to sue IBC for its "violation of the rights guaranteed to [plaintiff] under the Toxic Substances Control Act," not for its violation of state-law. (See First Am. Compl. ¶ 51.) Because the issue in this case is not whether the TSA preempts a state-law claim for retaliatory discharge, but whether the TSA affords plaintiff a right to sue for damages in this Court for IBC's alleged violation of its retaliation provision, McElroy is inapposite.

In short, the unambiguous language of the TSA establishes that Congress did not intend to create a private cause of action for enforcing its retaliation provision. IBC's motion for summary judgment on plaintiff's TSA claim is, therefore, granted.[3]

---

[3]IBC argues that "the Court has no subject matter jurisdiction to imply a private right of action" in this case. (Mem. Law Supp. IBC's Mot. Summ. J. at 6.) However, "[t]he question whether a cause of action exists is not a question of jurisdiction." Burks v. Lasker, 441 U.S. 471, 476 n.5 (1979). Thus, plaintiff's purported TSA claim is dismissed on the merits, rather than for lack of subject matter jurisdiction.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact on the claims plaintiff asserts against IBC, which is entitled to judgment as a matter of law. IBC's motion for summary judgment is, therefore, granted. Plaintiff's motion to file a second amended complaint is denied. This is a final and appealable order.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 9-19-02